UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| ROZONE PRODUCTIONS, LLC; RTR ILLUMINATED INVESTORS 3, LLC; and ROBERT T. ROSEN, | ) ) ) ) | CIV. 09-5015-JLV |
| Plaintiffs, | ) ) | ORDER GRANTING IN PART AND |
| vs. | ) ) ) | DENYING IN PART MOTION TO DISMISS |
| ANDREW ROCKY RACZKOWSKI; TICKETS PLUS INCORPORATED, d/b/a Star Tickets Plus; GOOD MUSIC AGENCY, INC., d/b/a Talent Buyers Network; BRIAN KNAFF; and ROBERT J. STRUYK, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**INTRODUCTION**

Plaintiffs' complaint (Docket 1) alleges causes of actions against defendants Good Music Agency, Inc., and Brian Knaff[1] for (1) breach of contract; (2) intentional misrepresentation; (3) deceit; (4) breach of fiduciary duty; (5) tortious interference with a valid business relationship or expectancy; and (6) civil conspiracy. Id. at pp. 7-8. Defendants deny any misconduct in their relationship with plaintiffs and assert counterclaims for (1) breach of contract and (2) misrepresentation. (Docket 20). Defendants filed a motion to

---

[1]Jointly referred to as "Good Music" or defendants or "Knaff" if referred to individually.

dismiss plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6). (Docket 57). The motion, made after the pleadings are closed, is a Rule 12(c) motion for judgment on the pleadings. The motion was briefed by the parties and is ripe for resolution.

**PLAINTIFFS' ALLEGATIONS**

A Rule 12(b)(6) motion to dismiss for failure to state a claim made after the pleadings are closed will be treated as a motion for judgment on the pleadings under Rule 12(c). Fed. R. Civ. P. 12(c). To analyze the motion to dismiss, plaintiffs' factual allegations must be taken as true. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009); Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555 (2007).[2] The following factual statements taken from plaintiffs' complaint are deemed true for this analysis.

Plaintiffs Rozone Productions, LLC, and RTR Illuminated Investors 3, LLC, entered into a joint venture agreement.[3] (Docket 1 ¶ 11). Rozone promoted musical concerts[4] on August 4, 5 and 6, 2008, at the Sturgis

---

[2]Since Bell is the most significant precedent on this issue, any internal quotations or citations to earlier cases are being omitted throughout the remainder of this order.

[3]Jointly referred to as "Rozone."

[4]Collectively referred to as "concerts."

Motorcycle Rally in South Dakota. Id. The concerts featured the popular musicians KISS, John Fogerty, and Kenny Chesney. Id. These three musical groups were hired by Rozone. Id. A fourth entertainer, Larry the Cable Guy, was also under contract to perform. Id.

By a written contract, Good Music was hired by Rozone to line up the musicians for the concerts. Id. at ¶ 12. Good Music, in turn, recommended to Rozone that it use Star Tickets to sell the tickets for the concerts. Id. Good Music represented to Rozone they had worked with Star Tickets on other concerts and Star Tickets was a sound ticket vendor. Id. Rozone relied on this representation. Id. Rozone had a number of telephone conversations and internet contacts with the Chief Executive Officer of Star Tickets, Andrew Rocky Raczkowski. Id. at ¶ 13. On May 1, 2008, Rozone and Star Tickets entered into a written contract for Star Tickets to sell the tickets to the Rally concerts for Rozone. Id.

Attendance at the concerts was enormous. Id. at ¶ 14. Representatives of the Sturgis Motorcycle Rally commented the crowd for the Kenny Chesney concert was the largest concert crowd ever at the Sturgis Motorcycle Rally.[5] Id. An expert from the School of Engineering at North Carolina State University opined the crowd for the Kenny Chesney concert exceeded 42,000 persons. Id. Raczkowski and Star Tickets reported to Rozone that ticket sales for all three

---

[5]The Sturgis Motorcycle Rally was in its 68th year.

concerts combined (i.e., KISS, John Fogerty and Kenny Chesney) were roughly at 25,000 persons. Id. at ¶ 15.

It is customary in the industry for Rozone, the concert promoter, to take immediate possession of the boxes containing the ticket stubs. Id. at ¶ 16. This is done so an accurate count can be made if a question should arise concerning the attendance figures–as the ticket stub count can then be compared to the number reported to the concert promoter by the company selling the tickets. Id. After the concerts, Raczkowski (and therefore Star Tickets acting through its agent) took possession of the ticket boxes himself. Id. Raczkowski destroyed ticket stubs from the ticket boxes so the number of ticket sales reported to Rozone would jibe with the number of ticket stubs in the ticket boxes. Id. Rozone discovered that Raczkowski ended up destroying more ticket stubs than the number of ticket sales reported to Rozone by Raczkowski and Star Tickets. Id. Raczkowski made statements about his involvement in the ticket accounting practices to persons at the airport in South Dakota and on three other occasions. Id. at ¶ 17.

Robert Struyk acted as a consultant and agent for Rozone in promoting the concerts. Id. at ¶ 18. It is believed that Struyk had full knowledge of prior problems with Star Tickets' accounting and ticket sales practices but failed to inform Rozone. Id.

Raczkowski and Star Tickets paid Knaff $2 for every ticket sold. Id. at ¶ 19. Raczkowski and Star Tickets covered up this $2 per ticket payment in a vague total of "fees and expenses" that were reported to Rozone. Id. Rozone never gave Raczkowski and Star Tickets the authority to pay Knaff. Id. Rozone never gave Knaff the authority to accept this payment. Id.

Good Music caused Larry the Cable Guy, who was under contract with Rozone, to refuse to perform at the concerts. (Docket 1 at ¶ 20). Rozone was required to pay all three musical groups (KISS, John Fogerty, and Kenny Chesney) for their performances at the concerts regardless of the number of tickets that were sold. Id. at ¶ 21. Plaintiffs lost millions of dollars and Rosen, individually, was required to advance roughly $1,000,000 to Rozone during the concerts. Id.

As against defendants Good Music Agency and Knaff, plaintiffs' complaint contains the following allegations:

1. Count One–Breach of Contract: Good Music Agency and Knaff is in breach of contract through the foregoing conduct and other conduct causing damage to the plaintiffs in an amount to be determined by a jury.

Id. at ¶ 36.

2. Count Two–Intentional Misrepresentation. Good Music Agency and Knaff engaged in intentional misrepresentation through the foregoing conduct and other conduct causing damage to the plaintiffs in an amount to be determined by a jury.

Id. at ¶ 37.

3. Count Three–Deceit: Good Music Agency and Knaff engaged in deceit through the foregoing conduct and other conduct causing damage to the plaintiffs in an amount to be determined by a jury.

Id. at ¶ 38.

4. Count Four–Breach of Fiduciary Duty: Good Music Agency and Knaff breached the fiduciary duty to plaintiffs through the foregoing conduct and other conduct causing damage to the plaintiffs in an amount to be determined by a jury.

Id. at ¶ 39.

5. Count Five–Tortious Interference with a Valid Business Relationship or Expectancy: Good Music Agency and Knaff engaged in tortious interference with a valid business relationship or expectancy by the foregoing conduct and other conduct causing damage to the plaintiffs in an amount to be determined by a jury.

Id. at ¶ 40.

6. Count Six–Civil Conspiracy: Good Music Agency and Knaff engaged with two or more persons with the intended purposes of accomplishing one or more of the foregoing counts, had a meeting of the minds on the object or course of action to be taken, which then took place resulting in damages to plaintiffs as the proximate result of the conspiracy.

Id. at ¶ 41.

## ANALYSIS

Under Fed. R. Civ. P. 8(a)(2), to state a claim for relief the complaint "must contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." This is required in "order to give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . ." Bell, 550 U.S. at 555.  "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Id.  "[O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation.  Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Id.  "The pleadings must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action, on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact) . . . ." Id. (emphasis in original).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." Id. at 556.

"The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'  It is not however, a 'probability requirement.' " Braden, 588 F.3d at 594 (citing Ashcroft, 129 S. Ct. at 1949) (citing Bell, 550 U.S. at 570).  "A complaint states a plausible claim for relief if its factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Id.

7

"In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide a framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft, 129 S. Ct. at 1950.

**1.     COUNT ONE–BREACH OF CONTRACT**

As plaintiffs' complaint applies to Good Music, the pleading describes a binding contract. The purpose of that contract was for these defendants to line up the musicians for the concerts. (Docket 1 ¶ 12).

"The elements that must be met in a breach of contract claim are: (1) an enforceable promise; (2) a breach of the promise; and (3) resulting damages." Gul v. Center for Family Medicine, 2009 SD 12 ¶ 8, 762 N.W.2d 629, 633. The complaint alleges Good Music breached its contract with plaintiffs by:

   a.   recommending that Star Tickets was a sound music vendor, when Good Music's real motivation for the recommendation was to receive payments from Star Tickets which were not contemplated by, nor disclosed in, Good Music's contract with plaintiffs;

   b.   receiving $2 from Star Tickets and Raczkowski for every ticket sold for the concerts;

   c.   receiving these funds from a source not contemplated by, nor identified in, defendants' contract with plaintiffs;

8

d.  receiving these funds in the form of an under-the-table, or kickback, payment without notice to or consent from plaintiffs; and

e.  after contracting with Rozone to line up musicians, Good Music allegedly worked to impede that contract and encouraged Larry the Cable Guy not to perform for Rozone.

These factual allegations are enough to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. . . ." Bell, 550 U.S. at 555. Plaintiffs have stated a claim for breach of contract by these defendants.

## 2. COUNT TWO–INTENTIONAL MISREPRESENTATION

In this diversity action, the court must look to South Dakota law for the elements of intentional misrepresentation. McCoy v. Augusta Fiberglass Coatings, Inc., 593 F.3d 737, 744 (8th Cir. 2010) ("When sitting in diversity, a district court's jury instructions must fairly and adequately represent the law of the forum state.").

"Intentional misrepresentation is defined by SDCL 20-10-1 as a wilful deception made with the intention of inducing a person 'to alter his position to his injury or risk.'" Ducheneaux v. Miller, 488 N.W.2d 902, 914-15 (S.D. 1992). "More than a finding of knowledge of falsity is required to warrant a conclusion of liability based on intentional misrepresentation . . . . an action for deceit requires proof that the misrepresentations were material . . . and that the plaintiff relied on the misrepresentations to his detriment." Id. at 915. The

9

South Dakota Supreme Court has held that "misrepresentation is essentially a false statement of material fact." Fuller v. Croston, 2006 SD 110 ¶ 40, 725 N.W.2d 600, 611. Reliance on the alleged false statement is necessary as proof of liability. Id.

Plaintiffs' complaint sufficiently alleges how defendant Good Music intentionally misrepresented one or more material facts. The complaint alleges that once hired by Rozone, Good Music "recommended . . . that Rozone use Star Tickets to sell tickets for the Concerts." (Docket 1 ¶ 12). The complaint goes on to allege that "Good Music . . . represented . . . (they) had worked with Star Tickets on other musical concerts and that Star Tickets was a sound ticket vendor." Id. The complaint alleges Good Music did not tell plaintiffs the following material and important information:

    a.    the real motivation for the recommendation was for Good Music to receive payments from Star Tickets which were not contemplated by, or disclosed in, Good Music's contract with plaintiffs;

    b.    Good Music would receive $2 from Star Tickets and Raczkowski for every ticket sold for the concerts; and

    c.    Good Music would receive these funds in the form of an under-the-table, or kickback, payment without notice to or consent from plaintiffs.

These allegations are sufficient to assert that the recommendation of Good Music was knowingly falsely made or was made with the intention of inducing Rozone to alter its position to its injury or risk. See Littau v. Midwest

Commodities, Inc., 316 N.W.2d 639, 643 (S.D. 1982) ("We have held that an action for deceit [intentional misrepresentation] requires proof that the misrepresentations were material to the formation of the contract and that the plaintiff relied on the misrepresentations to his detriment."). Fraud in the inducement of a contract "may exist where one party to a contract is unable to negotiate fair terms and make an informed decision because he is undermined by the other party's fraudulent behavior . . . ." Schwaiger v. Mitchell Radiology Associates, P.C., 2002 SD 97 ¶ 10, 652 N.W.2d 372, 376. By allegedly failing to disclose its separate, under-the-table arrangement with Star Tickets, the complaint asserts Good Music failed to provide plaintiffs with all the information they would need to make an informed decision about Star Tickets.

The factual allegations of plaintiffs' complaint satisfies the "heightened pleadings standard" required by Rule 9(b). Bell, 550 U.S. at 569 n. 14. "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." Rule 9(b). In asserting a fraud claim or other fraudulent conduct "a plaintiff must state factual allegations with greater particularity than Rule 8 requires." Id. This is the standard in "order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . ." Bell, 550 U.S. at 555.

"Under . . . Rule 9(b), a complaint must state with particularity the circumstances of the alleged fraudulent statement [and] must also state with

particularity facts giving rise to a strong inference that the defendant acted with the scienter required for the cause of action." McAdams v. McCord, 584 F.3d 1111, 1113 (8th Cir. 2009). Plaintiffs' complaint satisfies the requirements of Rule 9(b). Plaintiffs' complaint also presents the court with adequate facts, as required by Rule 8(a)(2), which would allow the court to "draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Braden, 588 F.3d at 594. Plaintiffs have stated a claim for intentional misrepresentation by these defendants.

## 3.    COUNT THREE–DECEIT

Deceit, within the conduct prohibited by SDCL § 20-10-1, is separately defined. Deceit is either:

(1)    The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

(2)    The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

(3)    The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

(4)    A promise made without any intention of performing.

SDCL § 20-10-2. "The tort action of deceit is based only upon actual fraud as defined by SDCL 20-10-2, and requires scienter or its equivalent." Biegler v. American Family Mutual Ins. Co., 2001 SD 13 ¶ 31 n. 2, 621 N.W.2d 592, 601 n. 2. "Intent to deceive and reliance are also required in order for fraud to be

12

actionable." Ehresmann v. Muth, 2008 SD 103 ¶ 20, 757 N.W.2d 402, 406. Again, "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." Rule 9(b).

Plaintiffs' complaint contains fact-specific allegations of deceit on the part of Good Music. In paragraph 19, plaintiffs allege that Knaff (and thus Good Music) received under-the-table, or kickback, payments from Star Tickets and Raczkowski. (Docket 1 ¶ 19). It is alleged this non-disclosed conduct misled plaintiffs in their relationship with Good Music and the other defendants. Id. Furthermore, it is specifically alleged Knaff had no authority under Good Music's contract with plaintiffs to receive these payments. Id. These allegations describe the kind of deception by Good Music which is contemplated by SDCL § 20-10-2 and Rule 9(b). Plaintiffs have stated a cause of action for deceit against these defendants.

**4.  COUNT FOUR–BREACH OF FIDUCIARY DUTY**

Under South Dakota law, "[a] fiduciary relationship requires one to have, in addition to 'confidence of the one in the other,' the existence of 'a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions, *giving to one advantage over the other.*' " Cole v. Wellmark of South Dakota, Inc., 2009 SD 108 ¶ 46, 776 N.W.2d 240, 253-54 (quoting Garrett v. BankWest, Inc., 459 N.W.2d 833, 838 (S.D. 1990) (quoting Yuster v. Keefe, 90 N.E. 920 (1910))

13

(emphasis in original). Because of these requirements, "South Dakota law reflects that most commercial or business relationships do not rise to the level of a fiduciary relationship when the parties are dealing over an arms-length transaction." Cole, 2009 SD 108 at ¶ 46, 776 N.W.2d at 254.

Plaintiffs have failed to allege how they had "confidence" in Good Music, how plaintiffs suffered "a certain inequality" of "business intelligence" or "other conditions," which gave the defendants an "advantage over" the plaintiffs. "Absent a legal duty," there can be no liability. Id. Plaintiffs' breach of fiduciary duty claim fails.

**5. COUNT FIVE–TORTIOUS INTERFERENCE WITH A VALID BUSINESS RELATIONSHIP OR EXPECTANCY**

To prove a claim for tortious interference with a valid business relationship or expectancy, plaintiffs must allege the following five elements:

1. the existence of a valid business relationship or expectancy;

2. knowledge by the interferer of the relationship or expectancy;

3. an intentional and unjustified act of interference on the part of the interferer;

4. proof that the interference caused the harm sustained; and

5. damage to the party whose relationship or expectancy was disrupted.

Dykstra v. Page Holding Co., 2009 SD 38 ¶ 39, 766 N.W.2d 491, 499.

Plaintiffs allege Good Music caused Larry the Cable Guy, who was under contract with Rozone, to refuse to perform at the concerts. (Docket 1 at ¶ 20). Plaintiffs further allege that Larry the Cable Guy's refusal to perform caused damage to plaintiffs. Id. The amount of those damages is to be determined by a jury. Id. at ¶ 40.

Plaintiffs' complaint "states a plausible claim for relief [as] its factual content . . . allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Braden, 588 F.3d at 594. Count five of plaintiffs' complaint survives defendants' motion to dismiss.

### 6. COUNT SIX–CIVIL CONSPIRACY

In South Dakota, "[a] civil conspiracy is, fundamentally, an agreement to commit a tort." Kirlin v. Halverson, 2008 SD 107 ¶ 59, 758 N.W.2d 436, 455. The essential elements of the tort of civil conspiracy which a plaintiff must allege are:

(1)  [the involvement of] two or more persons;

(2)  an object to be accomplished;

(3)  a meeting of the minds on the object or course of action to be taken;

(4)  *the commission of one or more unlawful overt acts*; and

(5)  damages as the proximate result of the conspiracy.

15

Id. (emphasis in original). The tort of civil conspiracy "is not an independent cause of action, but is sustainable only after an underlying tort claim has been established." Id.

Plaintiffs' civil conspiracy claim appears at paragraph 41 of their complaint. "Good Music . . . engaged with two or more persons with the intended purposes of accomplishing one or more of the foregoing counts, had a meeting of the minds on the object or course of action to be taken, which then took place resulting in damages to plaintiffs as the proximate result of the conspiracy." (Docket 1 ¶ 41). The alleged torts of intentional misrepresentation and deceit involved the participation of one or more of the other defendants. The complaint asserts Raczkowski and Star Tickets are the individuals with whom Good Music may have had a meeting of the minds to cause the commission of another tortious act. See Kirlin, 2008 SD 107 at ¶ 59, 758 N.W.2d at 455. These allegations are not an assertion of lawful parallel conduct, but rather are factual assertions that the defendants were actively engaged in an unlawful civil conspiracy. See Bell, 550 U.S. at 557 ("when allegations of parallel conduct are set out in order to make a [conspiracy] claim, they must be placed in a context that raises a suggestion of a preceding agreement . . . .").

The complaint alleges the other defendants were engaged in specifically described conduct with Good Music. This under-the-table, or kickback, relationship satisfies the allegations necessary to create an independent cause of action for civil conspiracy. Kirlin, 2008 SD 107 at ¶ 59, 758 N.W.2d at 455.

16

**CONCLUSION**

Based on the above analysis, it is hereby

ORDERED that the motion to dismiss (Docket 57) is granted in part and denied in part.

IT IS FURTHER ORDERED that count four of the complaint–Breach of Fiduciary Duty–is dismissed without prejudice.

IT IS FURTHER ORDERED that count one–Breach of Contract, count two–Intentional Misrepresentation, count three–Deceit, count five–Tortious Interference with a Valid Business Relationship or Expectancy, and count six–Civil Conspiracy of plaintiffs' complaint survive and defendants' motion is denied as to these counts.

Dated September 29 2010.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE