UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| C. DANIEL ROBERTS, | ) | CIV. 09-5015-JLV |
| BANKRUPTCY TRUSTEE FOR | ) | |
| ROZONE PRODUCTIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| ANDREW ROCKY RACZKOWSKI; | ) | |
| TICKETS PLUS INCORPORATED, | ) | |
| d/b/a Star Tickets Plus; | ) | |
| GOOD MUSIC AGENCY, INC., | ) | |
| d/b/a Talent Buyers Network; | ) | |
| BRIAN KNAFF; and | ) | |
| ROBERT J. STRUYK, | ) | |
| | ) | |
| Defendants. | ) | |

Defendant Tickets Plus Incorporated, d/b/a Star Tickets Plus ("Star

Tickets") filed a motion for summary judgment as to count two of plaintiff's

amended complaint (Docket 143); defendants Andrew Rocky Raczkowski

("Raczkowski") and Star Tickets (jointly "defendants") filed a motion to strike

two of plaintiff's proposed expert witnesses (Docket 145); and plaintiff C. Daniel

Roberts, Bankruptcy Trustee for Rozone Productions, LLC ("Rozone") filed a

motion to strike defendants' affirmative defenses. (Docket 147). Each motion

will be separately addressed.

**STAR TICKETS' MOTION FOR SUMMARY JUDGMENT**

**STANDARD OF REVIEW**

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at 248. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. Id. However, the moving party is entitled to judgment as a matter of law if the nonmoving party has failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986).  In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

## DISCUSSION

On June 11, 2012, Rozone filed an amended complaint with the following causes of action asserted against Star Tickets: count one-breach of contract; count two-negligent hiring/negligent retention/negligent supervision; count three-intentional misrepresentation; and count four-deceit.  (Docket 135 at pp. 8-9).  Each cause of action incorporated the general allegation sections of the amended complaint.  Id. at p. 8.  Star Tickets seeks summary judgment only as to count two of the amended complaint.  (Docket 143).

The general allegations of the amended complaint disclose the following paragraphs to support Rozone's claims about Star Tickets' negligent hiring, negligent retention, and negligent supervision:

3

23. Struyk has provided testimony that, during his time as the former CEO of Star Tickets, an employee, Jim Patchin, was caught stealing from the company by preprinting tickets on the computer system, reporting the tickets as returned on the system, and then selling the tickets that were registered as having been returned for cash, which he intended to keep.

24. Jim Patchin is the son of Jill Patchin, who was an employee of Star Tickets at the time at issue, and was the point person for Star Tickets with Rozone Productions for the 2008 Rockin the Rally concert season. In addition, Jill Patchin was the person in charge of the actual box office on site in Sturgis, South Dakota, in 2008.

25. Jim Patchin, Jill Patchin's son and former employee of Star Tickets who was fired for theft, was also in Sturgis in 2008 as a representative and employee or contractor of Star Tickets, despite Star Tickets' knowledge of Jim's prior theft from the company in a scheme similar to that which was committed in this matter.

26. With full knowledge of Jim Patchin's history of theft from Star Tickets, Raczkowski and Star Tickets asked Jill Patchin to run the ticketing of the Rockin the Rally concert and allowed Jim Patchin to be involved with Star Tickets at the concerts in Sturgis, South Dakota.

27. Among Raczkowski's and Star Tickets' duties were to supervise the activities of its sellers and money handlers, including but not limited to Patchin.

28. Defendants failed to properly supervise the activities of Patchin and other ticket sellers and handlers of money.

(Docket 135 at pp. 6-7). Count two makes only the following general allegation:

"Star Tickets failed to properly supervise its employees through the foregoing

conduct and other conduct, causing damage to the Plaintiff in an amount to be determined by a jury." Id. at p. 9 ¶ 40.

Consistent with the requirements of D.S.D. Civ. LR 56.1(A), Star Tickets submitted five undisputed material facts in support of its motion for summary judgment with citations to the record. (Docket 164). Under D.S.D. Civ. LR 56.1(B), Rozone filed its objections with citations to the record. (Docket 167). Star Tickets' undisputed material facts and Rozone's objections are:

Star Tickets' Statement:

1.    Rozone . . . entered into a written contract with Star Tickets under which Star Tickets was the exclusive ticket vendor for the August 4, 5 and 6, 2008 concerts at Glencoe Campground in Sturgis, South Dakota.

Rozone's Response:

1.    Admit.

Star Tickets' Statement:

2.    Jim Patchin was hired by Star Tickets to drive out the equipment for the August, 2008 concerts at Glencoe Campground and act as a runner for the Star Tickets employees in the box office.

Rozone's Response:

2.    Plaintiff admits that Jim Patchin was one of the employees hired by Star Tickets to work during the August 2008 Concerts at the Glencoe Campground. Plaintiff disputes Star Tickets' inference that Jim Patchin was hired exclusively to drive equipment or to act as a runner for Star Tickets' box office employees. Patchin's testimony about his employment duties was vague at

best. He testified that his "*main reason* for going was to drive the van with the computer equipment for my mom out there." . . . . He also testified that "after that it was *mainly* just a helping hand when [Jill Patchin] needed it." . . . Jim Patchin's mother was no more specific. She testified that Jim "[w]as hired to drive out the equipment . . . to assist in being a runner, *more or less,* for those of us in the box office." . . . Jill Patchin rehired her son Jim Patchin to be present at the 2008 Concerts, despite having knowledge of his prior act of theft from Star Tickets.

Star Tickets' Statement:

3.      Jim Patchin did not sell any tickets at the August, 2008 concerts at Glencoe Campground.

Rozone's Response:

3.      Plaintiff is without sufficient information to admit or dispute whether Jim Patchin sold any tickets at the August 2008 Concerts at Glencoe Campground, and therefore disputes the same. Jim Patchin testified that he was in the box office during the 2008 Concerts. . . . He also testified that he is sure the option for him to have access to the Veritix system was there, and that there may have been a password set aside for him. . . . Jim Patchin's deposition testimony that he was not selling tickets is self-serving and therefore not reliable as an undisputed fact upon which summary judgment can be granted.

Star Tickets' Statement:

4.      Jim Patchin did not have access to the Veritix ticketing system for ticket sales or reports for the August, 2008 concerts at Glencoe Campground.

Rozone's Response:

4.      Plaintiff disputes that Jim Patchin did not have access to the Veritix ticketing system for ticket sales or reports for

the August, 2008 Concerts. Jim Patchin testified that he had access to the box office. . . . Moreover, Jim Patchin is not the sole focus of Plaintiff's negligence claims against the Defendant Star Tickets. Defendant Star Tickets is liable for negligently hiring, supervising, and retaining Star Tickets' employees. No allegation has been made that Jim Patchin hired, supervised, or retained anyone.

Star Tickets' Statement:

5.      Jim Patchin did not engage in any wrongdoing at the August, 2008 concerts at Glencoe Campground.

Rozone's Response:

5.      Plaintiff is without sufficient information to admit or dispute whether Jim Patchin engaged in any "wrongdoing" at the August 2008 Concerts, and therefore denies the same. Other than Jim Patchin's self-serving testimony, there is no unrebuttable evidence that Jim Patchin did not engage in wrongdoing with others at the 2008 Concerts. Further, Plaintiff's claims are based upon the act of being a person who had his position terminated in the past for theft. Moreover, Jim Patchin is not the sole focus of Plaintiff's negligence claims against the Defendant Star Tickets. Defendant Star Tickets is liable for negligently hiring, supervising, and retaining Star Tickets' employees. No allegation has been made that Jim Patchin hired, supervised, or retained anyone.

(Dockets 164 at pp. 1-2 & 167 at pp. 1-3) (emphasis in original).

This case is before the court on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Dockets 136 at p. 3 ¶ 11 & 138 at p. 3 ¶ 11). "[F]ederal courts sitting in diversity cases, when deciding questions of 'substantive' law, are bound by state court decisions as well as state statutes." Hanna v. Plumer,

380 U.S. 460, 465 (1965) (referencing Erie R. Co. v. Tompkins, 304 U.S. 64

(1938)). Only then can the court determine whether summary judgment is

appropriate. United States v. One Parcel of Real Property, 27 F.3d 327, 329 n.

1 (8th Cir. 1994). The substantive law of the forum state–here, South

Dakota–must be applied. Erie R. Co., 304 U.S. 64 at 78.

In South Dakota "[t]here are three requirements in a negligence claim:

(1) a duty on the part of the defendant; (2) a failure to perform that duty; and

(3) an injury to the plaintiff resulting from such a failure." Kirlin v. Halverson,

2008 S.D. 107, ¶ 28, 758 N.W.2d 436, 448 (internal quotation marks and

citation omitted). "The existence of a duty is a question of law . . . ." Id.

(internal citation omitted). "The duty involved in a negligent supervision claim

is one of ordinary care." Iverson v. NPC International, Inc., 2011 S.D. 40, ¶ 23,

801 N.W.2d 275, 283.

> [A] negligent hiring claim suggests that *at the time an employee was
> hired*, it was negligent for an employer to engage the employee's
> services based on what the employer knew or should have known
> about the employee. A negligent retention claim alleges that
> information which the employer came to know, or should have
> become aware of, after hiring the employee made continued
> employment of the employee negligent. . . . a negligent supervision
> claim alleges that the employer inadequately or defectively *managed,
> directed or oversaw* its employees.

Kirlin, 2008 S.D. at ¶ 45, 758 N.W.2d at 452 (emphasis in original). "A

negligent supervision claim alleges that the employer inadequately or

defectively managed, directed or oversaw its employees. . . . a negligent

supervision claim implicates more than the employer's duty to control the

employee. A claim of negligent supervision avers that the employer failed to exercise reasonable care in supervising (managing, directing, or overseeing) its employees so as to prevent harm to . . . third persons." Iverson, 2011 S.D. at ¶ 23, 801 N.W.2d at 282.

The crux of defendants' summary judgment motion is the lack of any connection between Mr. Patchin's earlier theft conduct and the theft of money from Star Tickets which was due Rozone under the contract. In other words, Rozone must point to some evidence of wrongdoing by Mr. Patchin which resulted in damages to plaintiff. Anderson, 477 U.S. at 256.

Local Rule 56.1 specifically requires a party opposing a motion for summary judgment to "identify any material fact as to which it is contended that there exists a genuine material issue to be tried." D.S.D. Civ. LR 56.1(B). Plaintiff's objections fail to satisfy Local Rule 56.1(B). In response to Star Tickets' undisputed material fact statement–Mr. Patchin did not sell any concert tickets–Rozone failed to specifically point to any evidence to contradict the statement, but rather alleged "Plaintiff is without sufficient information to admit or dispute whether Jim Patchin sold any tickets at the August 2008 Concerts at Glencoe Campground, and therefore disputes the same." (Docket 167 at p. 2). Similarly, Rozone's declaration "[Mr.] Patchin's deposition testimony that he was not selling tickets is self-serving and therefore not

reliable as an undisputed fact upon which summary judgment can be granted"
does not constitute evidence, but rather is an unsubstantiated argument.  Id.

In response to Star Tickets' citation to the record showing Mr. Patchin
did nothing wrong during the 2008 concerts, Rozone responded it was "without
sufficient information to admit or dispute whether Jim Patchin engaged in any
'wrongdoing' at the August 2008 Concerts, and therefore denies the same.
Other than Jim Patchin's self-serving testimony, there is no unrebuttable
evidence that Jim Patchin did not engage in wrongdoing with others at the
2008 Concerts."  Id. at p. 3.  Rozone's use of a double negative, without
identifying specific evidence to support its position, does not rise to the level of
a "material fact as to which it is contended that there exists a genuine material
issue to be tried."  D.S.D. Civ. LR 56.1(B).

"The mere existence of a scintilla of evidence in support of the plaintiff's
position will be insufficient; there must be evidence on which the jury could
reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  See also Thomas
v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007) (mere allegations, unsupported by
specific facts or evidence beyond a nonmoving party's own conclusions, are
insufficient to withstand motion for summary judgment).  The court should not
be required to "resort[] to rank speculation or conjecture" to conclude there are
sufficient material facts to defeat summary judgment.  Ruzicka Electric & Sons,
Inc. v. International Brotherhood of Electrical Workers, Local 1, AFL-CIO, 427

F.3d 511, 521 (8th Cir. 2005).  "Summary judgment should be granted when—viewing the facts most favorably to the nonmoving party and giving that party the benefit of all reasonable inferences—the record shows that there is no genuine issue of material fact." Center for Special Needs Trust Administration, Inc. v. Olson, 676 F.3d 688, 698 (8th Cir. 2012) (citing Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir.) (*en banc*), *cert. denied,* ___ U.S.___, 132 S. Ct. 513 (2011)).

The court reaches the same conclusion on Rozone's argument concerning Star Tickets' other employees.  Plaintiff fails to specifically direct the court to any evidence which supports a claim of negligent hiring, supervision or retention of any Star Tickets employee.  D.S.D. Civ. LR 56.1(B); Anderson, 477 U.S. at 252; Thomas, 483 F.3d at 527.

Defendant Star Tickets' motion for summary judgment (Docket 143) is granted.

## DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S EXPERT TESTIMONY

Defendants move to strike plaintiff's designated experts, Scott S. Miller and Tim Stuhlreyer, pursuant to Fed. R. Evid. 702.  (Docket 145).  Defendants argue Mr. Miller and Mr. Stuhlreyer "are not qualified in the ticketing or concert industries and are merely acting as calculators adopting, without any scrutiny, the attendance figures determined by Dr. Russ and Dr. Rothman [plaintiff's expert and defendants' expert], multiplying those figures by the

11

ticket prices to create a revenue range, then backing out expenses to create a

damages range which they revised three times." (Docket 150 at p. 2).

Defendants challenge plaintiff's proposed witnesses on three separate grounds:

> 1. There is no evidence that either "expert" has the requisite experience or knowledge in the areas of crowd size, concert ticketing, or the concert industry . . . .
>
> 2. The testimony is speculative, and therefore unreliable, because the Reports are not based on any independent research, and fail to give any definitive answer to the ultimate question of damages, merely providing a range . . . .
>
> 3. The testimony is not helpful to the jury because it can, with the assistance of the parties' arguments, simply multiply Russ and Rothman's crowd estimates by the ticket prices then subtract expenses, just like the so-called "experts" did.

(Docket 150 at p. 2). Plaintiff resists defendants' motion asserting:

> Rozone . . . enlisted Convergent Capital Appraisers ("CCA"), a business valuation and litigation consulting firm, to prepare an economic damages report for this matter. The managers of Convergent Capital, Scott S. Miller and Tim Stuhlreyer, undertook this analysis and co-authored a lost profits report that calculated two measures of damages: first, Rozone['s] . . . lost profits related only to the 2008 Concerts, and second, Rozone['s] . . . lost profits related to the 2009 and 2010 concerts at the Glencoe Campground.

(Docket 158 at p. 2). Through discovery to date, plaintiff asserts the

"Stuhlreyer Report III . . . provides an economic analysis of the lost profits

suffered by Rozone . . . using proper methodology and analysis of the

contributing variables affecting the calculations. CCA is certainly qualified to

render an opinion via Tim Stuhlreyer as to lost profits suffered by Rozone . . .

12

and CCA's report will assist the trier of fact in understanding lost profits and the calculations used by Plaintiff regarding damages." Id. at pp. 10-11.

Admissibility of expert testimony is governed by Fed. R. Evid. 702. The rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The court is vested with a gate-keeping function regarding all expert testimony. The object of the court's gate-keeping function "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999). "[T]he the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). "[T]he trial judge must have

considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.  That is to say, a trial court should consider the specific factors identified in Daubert where they are reasonable measures of the reliability of expert testimony."  Kumho Tire Co., Ltd., 526 U.S. at 152.  "The trial court must have the same kind of latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable."  Id. (emphasis in original).  See Allen v. Brown Clinic, P.L.L.P., 531 F.3d 568, 573 (8th Cir. 2008) ("the district court may evaluate one or all of the following factors: 1) whether the theory or technique can be or has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and 4) whether the theory or technique is generally accepted in the scientific community.") (citing Daubert, 509 U.S. at 593-94).

"The inquiry envisioned by Rule 702 is . . . a flexible one.  Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission.  The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."  Daubert, 509 U.S. at 594-95.  "Regardless of what factors

are evaluated, the main inquiry is whether the proffered expert's testimony is sufficiently reliable." <u>Allen</u>, 531 F.3d at 574.

## **EXPERT QUALIFICATIONS**

Defendants argue neither "Stuhlreyer or [Miller][1] have any knowledge or expertise in the concert industry or in concert ticketing." (Docket 150 at p. 9). The court will focus on Mr. Stuhlreyer as plaintiff's counsel advised defense counsel that only Mr. Stuhlreyer would be presented as a trial witness. (Docket 146-5 at p. 9 at 30:8-18).[2]

Mr. Stuhlreyer has a master's degree in business administration and is a certified public accountant with accreditation in business evaluation. (Docket 146-5 at p. 2 at 5:23-6:21). In addition to being a C.P.A., Mr. Stuhlreyer has an "ABV"[3] certification from the American Institute of Certified Professional Accountants and an "ASA"[4] certification from the American Society of Appraisers. <u>Id.</u> at p. 3 at 6:21-8:2. In addition to his work in estate gift tax,

---

[1]Defendants incorrectly identify Mr. Miller as "Mr. Smith." (Docket 158 at p. 1 n. 1).

[2]The court will cite to the appropriate page of a filing in CM/ECF then to the transcript page and line(s) referenced within the deposition.

[3]An "ABV" is "an accredited business valuation certification." (Docket 146-5 at p. 3 at 6:15-17).

[4]An "ASA" is "an accredited senior appraiser." (Docket 146-5 at p. 3 at 6:15-18.

Mr. Stuhlreyer does financial reporting and litigation consulting.  Id. at p. 4 at 11:7-12.

Mr. Stuhlreyer and Mr. Miller were asked "to utilize estimates from crowd estimates and develop a lost profits analysis from that."  Id. at p. 14 at 50:2-4. The scope of their work "was to use an estimate or range that included both the Rothman[5] analysis and the Russ[6] analysis."  Id. at p. 19 at 69:1-3.  In addition, Mr. Stuhlreyer considered Star Tickets' report as to the number of tickets it sold for the concerts.  Id. at p. 20 at 75:9-14.

Having considered Mr. Stuhlreyer's deposition testimony, the court is satisfied, based on the witness's education, training, and knowledge as a certified public accountant, Mr. Stuhlreyer is qualified to testify as to plaintiff's damages.  The court finds Mr. Stuhlreyer is qualified to testify as an expert in this case.  Fed. R. Evid. 702.

**THE REPORT DOES NOT STATE A DEFINITIVE DAMAGES AMOUNT**

Defendants object because Mr. Stuhlreyer "take[s] Russ and Rothman's estimation of crowd size and treats them as high-end and low-end estimations despite the fact neither were published as same, and multiplies those numbers by ticket price . . . [Mr. Stuhlreyer's] conclusion is expressed in a broad range

---

[5]Edward D. Rothman, Ph.D., prepared an "Estimate of Crowd Size at Two Concerts" for defendants.  (Docket 146-3).

[6]Mr. Russ prepared a "Report on Analysis of Attendance at Two Concerts" for plaintiff.  (Docket 159-5).

rather than a definitive amount." (Docket 150 at p. 9). Mr. Stuhlreyer's report of September 12, 2012, does present a series of "Low Estimates," "Midpoint Estimates," and "High Estimates" for the two concerts analyzed. (Docket 159-4 at p. 8). Under Rule 702, the proposed expert testimony must be reliable in an evidentiary sense. Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001). "First, evidence . . . must be useful to the finder of fact in deciding the ultimate issue of fact . . . . This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. . . . Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires . . . ." Id. (citing 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 702.02[3] (2001) (internal quotation marks omitted).

It is common for an expert witness to give a range of potential damage figures depending on a number of variables analyzed by the witness. See Johnson v. Cowell Steel Structures, Inc., 991 F.2d 474, 477-78 (8th Cir. 1993) ("Although the jury's award was on the low end of the damages range presented by the parties' experts, it was within the range of damages introduced into evidence and was well-above the lowest figure presented by [defendant's expert]."); Neiman-Marcus Group, Inc. v. Dworkin, 919 F.2d 368, 372 (5th Cir. 1990) ("The jury enjoys substantial discretion in awarding damages within the

range shown by the evidence.") (referencing <u>F.H. Krear & Co. v. Nineteen Named Trustees</u>, 810 F.2d 1250, 1260 (2d Cir.1987)); <u>Kinergy Corp. v. Conveyor Dynamics Corp.</u>, No. 4:01CV-00211 ERW, 2003 WL 26110512 (E.D. Mo. Oct. 14, 2003) ("[T]he Court finds that [the] testimony will aid the jury in assessing the range of damages suffered by Kinergy in the event the jury finds a misappropriation of trade secrets occurred.").  Should the jury conclude plaintiff is entitled to recover money damages, Mr. Stuhlreyer's testimony will be useful for the jury's consideration.

**THE PROCESS IS SIMPLE MATHEMATICS**

Defendants suggest Mr. Stuhlreyer's testimony is not helpful because the jury can simply multiply the other experts' crowd estimate figures by the ticket price, subtract expenses, and arrive at a damages figure.  (Docket 150 at p. 2).  Mr. Stuhlreyer's report incorporates the ultimate conclusions of other witnesses, considers data supplied by Star Tickets, engages in a number of comparative mathematical analyses, and then arrives at a mathematical conclusion which does include three different estimates of plaintiff's lost profits.  (Docket 159-4).  While each step may be analyzed as "simple math," the combination of these processes is certainly within the realm of expertise of a C.P.A. and would be helpful to the jury.

"[T]he factual basis of an expert's opinion generally relates to the weight a jury ought to accord that opinion. . . . Thus, unless the factual or

18

methodological basis for the testimony is fundamentally unreliable, its admission is not an abuse of discretion." Margolies v. McCleary, Inc., 447 F.3d 1115, 1121 (8th Cir. 2006). Challenges to the factual basis for an expert's opinion does not generally affect its admissibility. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Children's Broadcasting Corp. v. Walt Disney Co., 357 F.3d 860, 865 (8th Cir. 2004) (citing Bonner v. ISP Technologies, Inc., 259 F.3d 924, 929-30 (8th Cir. 2001) (quoting Hose v. Chicago Northwestern Transportation Co., 70 F.3d 968, 974 (8th Cir. 1996)). Whether Mr. Stuhlreyer's conclusions are accurate or should be accepted by the jury may be tested by vigorous cross-examination. Moran v. Ford Motor Co., 476 F.2d 289, 291 (8th Cir. 1973).

The court finds Mr. Stuhlreyer's proposed testimony qualifies under Fed. R. Evid. 702. Defendants' motion (Docket 145) is denied as to Mr. Stuhlreyer.

## PLAINTIFF'S MOTION TO STRIKE
## DEFENDANTS' AFFIRMATIVE DEFENSES

Rozone moves to strike defendants' affirmative defenses number six, seven and fourteen. (Docket 148 at pp. 3, 6, & 8). Defendants' brief stipulates plaintiff's motion should be granted as to affirmative defense number seven-

unclean hands.  (Docket 156 at p. 1 n. 1).  The court will grant plaintiff's motion as to defendants' affirmative defense number seven.

Defendants' affirmative defense number six states "[a]ny damages alleged by Plaintiff are the direct and proximate result of Plaintiff's own misconduct or negligence." (Docket 138 at p. 14 ¶ 6).  Affirmative defense number fourteen asserts "Plaintiff was guilty of negligence or other conduct which was the sole or partial cause of any injury complained of, that said contributory negligence constitutes proximate cause of the injuries complained of, and as a result, Plaintiff's claims for damages are barred or diminished by such contributory negligence."  Id. at p. 16 ¶ 14.  Both affirmative defenses assert contributory negligence.  For that reason, the court will use the phrase "contributory negligence" for the remainder of this discussion.

Defendants acknowledge their affirmative defense of contributory negligence is available only in response to plaintiff's negligent hiring, supervision and retention claims.  (Docket 156 at p. 8).  The court dismissed count two of the amended complaint,Rozone's only negligence claim.  Plaintiff's motion to strike affirmative defenses six and fourteen is moot.

## ORDER

Based on the above analysis, it is hereby

ORDERED that defendant Star Tickets' motion (Docket 143) is granted and count two of plaintiff's amended complaint is dismissed with prejudice.

20

IT IS FURTHER ORDERED that the defendants' motion to strike plaintiff's proposed expert witness (Docket 145) is denied.

IT IS FURTHER ORDERED that plaintiff's motion to strike affirmative defenses (Docket 147) is granted in part and denied in part. Defendants' affirmative defense number seven is stricken. Plaintiff's motion to strike defendants' affirmative defenses six and fourteen is denied as moot.

Dated February 12, 2013.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE